# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HD CARRIER, LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>AT&T CORP.,<br><br>                Defendant. | Case No. 2:20-cv-06509-JWH (JPRx)<br><br>**MEMORANDUM OPINION ON (1) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Dkt. No. 11]; AND (2) DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Dkt. No. 22]** |

Before the Court are (1) the motion of Plaintiff HD Carrier, LLC for a preliminary injunction;[1] and (2) the motion of Defendant AT&T Corp. to dismiss for lack of subject matter jurisdiction or, in the alternative, to stay this case.[2]  After considering the papers filed in support of and in opposition to both motions, and with the benefit of the October 23, 2020, hearing, the Court will **GRANT in part** and **DENY in part** AT&T's MTD and **DENY** HD Carrier's PI Motion.

## I.  BACKGROUND

Millions of Americans have become familiar during the COVID-19 pandemic with a common method for setting up a free conference call: log onto a site like FreeConferenceCall.com, sign up for a phone number and passcode, circulate that number and passcode to colleagues, dial in, and enter the passcode.  The users are never charged.  This case concerns who pays for the users' free lunch.[3]

On July 22, 2020, HD Carrier, a Nevada company that facilitates free conference calls, filed a complaint against AT&T, a telecommunications corporation.  HD Carrier alleges that AT&T is blocking HD Carrier's calls in violation of the federal Communications Act (47 U.S.C. §§ 201(b) & 202(a)) and California unfair competition law (Cal. Bus. & Prof. Code § 17200).[4]

### A.   HD Carrier's Preliminary Injunction Motion

On July 24, HD Carrier moved for a preliminary injunction, alleging that AT&T's call-blocking scheme constitutes ongoing and irreparable harm and that a preliminary injunction is in the public interest because of the nation's

---

[1]   Pl.'s Mot. for Prelim. Inj. (the "PI Motion") [Dkt. No. 11].
[2]   Def.'s Mot. to Dismiss (the "MTD") [Dkt. No. 22].
[3]   *See generally* Milton Friedman, *There's No Such Thing as a Free Lunch* (1975).
[4]   Compl. [Dkt. No. 1] ¶¶ 5, 6, 17, 18, & 21.

increased telework needs during the COVID-19 pandemic.[5] In support of its PI Motion, HD Carrier submitted the following materials:

- Declaration of David Erickson, manager of HD Carrier [Dkt. No. 11-1]
  - FCC Robocall Blocking Report [Dkt. No. 11-1, Ex. A]
- Declaration of Andrew Nickerson, CEO of Wide Voice, LLC [Dkt. No. 11-2]
  - December 2019 call volume forecast [Dkt. No. 11-2, Ex. A]
  - January 2020 call volume forecast [Dkt. No. 11-2, Ex. B]
  - January 7, 2020, email from Wide Voice to AT&T [Dkt. No. 11-2, Ex. C]
  - March 2020 call volume forecast [Dkt. No. 11-2, Ex. D]
  - Call volume graph [Dkt. No. 11-2, Ex. E]
  - January 2020 call volume graph [Dkt. No. 11-2, Ex. F]
  - June 2020 call volume graph [Dkt. No. 11-2, Ex. G]
- Declaration of Bryan Petersen, Vice President of Network Operations at HD Carrier [Dkt. No. 11-3]
  - Test call results [Dkt. No. 11-3, Ex. A]
  - Customer complaints [Dkt. No. 11-3, Ex. B]

On September 17, 2020, AT&T filed its papers in opposition to HD Carrier's PI Motion,[6] including the following materials:

- Declaration of Michael Hunseder, counsel for AT&T [Dkt. No. 25-1]
  - June 2, 2020, letter from Lauren Coppola, HD Carrier's counsel, to Rosemary McEnery, Chief Market Disputes Resolution Division of the Federal Communications Commission (the "HD Carrier-FCC Letter") [Dkt. No. 25-1, Ex. A]

---

[5] PI Motion 19 & 21.

[6] Def.'s Opp'n to the PI Motion (the "PI Opposition") [Dkt. No. 25].

- - April 24, 2020, letter from Hunseder and Scott Angstreich, counsel for Verizon, to McEnery (the "AT&T-Verizon Informal Complaint") [Dkt. No. 25-1, Ex. B]
- Declaration of Kimberly A. Meola, Assistant Vice President of Global Connections Management for AT&T [Dkt. No. 25-2]
  - Wide Voice 2020 call volume forecast [Dkt. No. 25-2, Ex. A]
  - January 2020 emails between Wide Voice and AT&T [Dkt. No. 25-2, Ex. B]
  - Wide Voice revised January 2020 call forecast [Dkt. No. 25-2, Ex. C]
  - AT&T Opposition to Free Conferencing Waiver Petition before the FCC [Dkt. No. 25-2, Ex. D]
  - August-September 2020 emails between Wide Voice and AT&T [Dkt. No. 25-2, Ex. E]

HD Carrier replied on September 24[7] and attached the following supporting evidence:

- Declaration of David Erickson [Dkt. No. 30-1]
- Declaration of Andrew Nickerson (the "Nickerson Decl. 2") [Dkt. No. 30-2]
- Declaration of Tandy DeCosta, Director of Telephony Services at Wide Voice [Dkt. No. 30-3]
- AT&T Disconnect Orders [Dkt. No. 30-3, Ex. A]

**B.  AT&T's Motion to Dismiss**

On August 28, AT&T moved to dismiss the complaint on the ground that this Court lacks subject matter jurisdiction under the Communications Act.  In the alternative, AT&T requests a stay of this action under the primary

---

[7]  Pl.'s Reply in Supp. of PI Motion (the "PI Reply") [Dkt. No. 30].

-4-

jurisdiction doctrine.[8] In support of its MTD, AT&T filed the following materials:

- Declaration of Michael Hunseder [Dkt. No. 22-1]
- HD Carrier-FCC Letter [Dkt. No. 22-2]
- AT&T-Verizon Informal Complaint [Dkt. No. 22-3]

On September 17, HD Carrier opposed the MTD[9] and filed the following papers in support of its opposition:

- Declaration of David Erickson [Dkt. No. 24-1]
  - AT&T December 2016 Reply Comments in Support of a Petition for Forbearance before the FCC [Dkt. No. 24-1, Ex. A]
  - AT&T April 2019 Ex Parte Submission to the FCC [Dkt. No. 24-1, Ex. B]
  - AT&T March 2020 Letter to the FCC [Dkt. No. 24-1, Ex. C]
  - The FCC's Market Disputes Resolution Guidance [Dkt. No. 24-1, Ex. D]

AT&T replied on September 24.[10] The Court held a hearing on both motions on October 23, 2020.[11]

On November 5, AT&T filed a Supplemental Notice[12] informing the Court that another court in this district recently stayed a similar case under the primary jurisdiction doctrine. *See Wide Voice v. CenturyLink*, No. 2:20-cv-06868-VAP-GJSx (Nov. 4, 2020) (the "*Wide Voice* Order"). Additionally, AT&T represented in the First Supplemental Notice that the FCC

---

[8] MTD 9 & 12.
[9] Pl.'s Opp'n to MTD (the "MTD Opposition") [Dkt. No. 24].
[10] Def.'s Reply in Supp. of MTD (the "MTD Reply") [Dkt. No. 31].
[11] *See* Mot. to Dismiss Hr'g Tr. (the "Transcript") [Dkt. No. 43].
[12] Def.'s Suppl. Notice Regarding Recent Developments of Parallel Proceedings and Additional Auth. Regarding Section 201(b) of the Communications Act (the "First Supplemental Notice") [Dkt. No 46].

will issue a written order in its informal complaint against Wide Voice by April 2021.[13]  HD Carrier responded the next day, arguing that *Wide Voice v. CenturyLink* is not a parallel proceeding to the instant case.[14]  On November 19, AT&T filed a Second Supplemental Notice,[15] to which HD Carrier responded the next day.[16]

## II.  **FACTUAL ALLEGATIONS**

When an individual makes a standard long-distance telephone call, an interexchange carrier ("IXC") like AT&T connects the call to a local exchange company ("LEC"), which connects the call to the intended recipient.[17]  Thus, when an AT&T customer makes a long-distance phone call to her mother, for example, that call makes three stops: AT&T, the LEC, and Mom.

Conference calls are slightly more complicated.  First, FreeConferenceCall.com and other similar companies procure phone numbers from an entity like HD Carrier, a Voice over Internet Protocol ("VoIP") purveyor.[18]  When an individual dials one of these numbers to attend a free conference call, her call makes more than three stops.  First, AT&T (or another IXC) connects the call to one of HD Carrier's tandem partners, such as Wide Voice.[19]  Wide Voice then connects the call to HD Carrier, which connects the call to FreeConferenceCall.com.[20]

---

[13]    *Id.* at 3.  The First Supplemental Notice also contains substantive arguments, which the Court does not address here, as they are neither properly raised nor determinative.
[14]    Pl.'s Resp. to First Supplemental Notice [Dkt. No. 47] 1-2.
[15]    Def.'s Supplemental Update Regarding AT&T's Mot. to Dismiss (the "Second Supplemental Notice") [Dkt. No. 48].
[16]    Pl.'s Resp. to Second Supplemental Notice [Dkt. No. 49].
[17]    Compl. ¶¶ 11 & 12.
[18]    *Id.* ¶ 15.
[19]    *Id.* ¶ 17.
[20]    *Id.* ¶ 18.

AT&T alleges that companies like HD Carrier, Wide Voice, and FreeConferenceCall.com realize a profit by routing those calls unnecessarily long distances in order to receive inflated long-distance tariffs from IXCs like AT&T—an "access arbitrage" scheme.[21] Counsel for HD Carrier acknowledged that non-parties Wide Voice and FreeConferenceCall.com have previously engaged in access arbitrage but asserted that they ceased the practice after an unfavorable FCC ruling.[22]

HD Carrier alleges that since January 2020, AT&T has choked HD Carrier's traffic by actively blocking calls and by refusing to invest in the technology needed to carry all of HD Carrier's calls.[23] When individuals call HD Carrier's phone numbers, they hear busy signals or their calls are dropped.[24] AT&T's activities have damaged HD Carrier's business reputation and revenue stream.[25]

### III. LEGAL STANDARD

**A.   Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows parties to move to dismiss a complaint for lack of subject matter jurisdiction. When a defendant makes a Rule 12(b)(1) motion, the burden of establishing subject matter jurisdiction rests upon the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377.

---

[21]   AT&T-Verizon Informal Complaint 5-6. Because AT&T submits the AT&T-Verizon Informal Complaint to challenge the Court's subject matter jurisdiction, the Court may consider its factual allegations. *See infra* § III(A).
[22]   Transcript at 20:15-22.
[23]   Compl. ¶¶ 27-29.
[24]   *Id.*
[25]   *Id.* ¶¶ 58-64.

A Rule 12(b)(1) jurisdictional attack may be either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Courts accept as true all factual allegations in the complaint in a facial attack. *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1072 (9th Cir. 2014). However, courts do not accept legal conclusions in the complaint as true, even if "cast in the form of factual allegations." *Id.* Further, courts need not accept allegations that fail to state a claim for relief that is plausible on its face. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* In such a motion, the court need not presume the truthfulness of the plaintiff's allegations. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

### B.     Primary Jurisdiction Doctrine

The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency. *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir.2008). "Primary jurisdiction doctrine" is a bit of a misnomer; a court's invocation of the doctrine does not indicate that it lacks jurisdiction. *Reiter v. Cooper,* 507 U.S. 258, 268–69 (1993). Rather, the

doctrine is a prudential one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that the agency with regulatory authority over the relevant industry should address in the first instance, rather than the judicial branch. *See Syntek Semiconductor Co. v. Microchip Tech. Inc.,* 307 F.3d 775, 780 (9th Cir. 2002). Four factors aid the Court in evaluating primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* at 781.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

A plaintiff alleging a violation of § 201(b)[26] and § 202(a) of the Communications Act may elect either (1) to bring its complaint to the FCC; or (2) to file a lawsuit in federal district court; it may not do both. *See* 47 U.S.C. § 207; *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1205 (9th Cir. 2008) ("§ 207 offers aggrieved individuals a choice of remedies for alleged violations of the Telecommunications Act: they may go to the F.C.C., presumably by bringing a complaint under § 208—which provides a mechanism for filing complaints before the F.C.C.—or to a district court").

In its Complaint, HD Carrier avers that this Court has federal question subject matter jurisdiction under § 207.[27] HD Carrier does not address the election of remedies in § 207. On its face, then, the Complaint alleges facts sufficient to invoke this Court's jurisdiction.

---

[26] Unless otherwise indicated, subsequent statutory citations refer to the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*

[27] Compl. ¶ 7.

AT&T responds, however, that HD Carrier previously filed an informal complaint before the FCC, thereby depriving this Court of subject matter jurisdiction under § 207.[28]  Because this allegation converts the motion to dismiss into a factual motion, the Court must consider AT&T's evidence. *See Safe Air*, 373 F.3d at 1039.  AT&T attaches as an exhibit to its MTD the HD Carrier-FCC Letter—a June 2, 2020, communication from HD Carrier's counsel to Rosemary McEnery, Chief of the Market Disputes Resolution Division of the FCC.  This letter bears the subject line "Notice of Intent to File Complaint Pursuant to 47 U.S.C. § 208(b)(1) Against AT&T [redacted]," and it details the same grievances as the Complaint.[29]  AT&T contends that this letter constitutes an informal complaint and so deprives this Court of subject matter jurisdiction under § 207.

The plaintiff—HD Carrier—bears the burden of establishing subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.  HD Carrier does not dispute the authenticity of the HD Carrier-FCC Letter; instead, HD Carrier contends that the letter is a mere pre-complaint letter of intent, and, thus, it does not elect the FCC's jurisdiction under § 207.[30]  Subject matter jurisdiction in this case therefore rests on whether the HD Carrier-FCC Letter constitutes a complaint under § 208, the statute that defines the process for filing a formal complaint with the FCC.

Complaints to the FCC "may be either formal or informal."  47 C.F.R. § 1.711.  Neither party asserts that HD Carrier has filed a ***formal*** complaint; the parties dispute whether HD Carrier's letter is an ***informal*** complaint.[31]  "An

---

[28]   MTD at 9-12.
[29]   *See* HD Carrier-FCC Letter.
[30]   MTD Opposition at 12-16.
[31]   Courts have long found that informal complaints divest federal courts of jurisdiction just as do formal complaints. *See, e.g.*, *Stiles v. GTE Sw. Inc.*, 128

-10-

informal complaint shall be in writing and should contain: (a) The name, address and telephone number of the complaint, (b) the name of the carrier against which the complaint is made, (c) a complete statement of the facts tending to show that such carrier did or omitted to do anything in contravention of the Communications Act, and (d) the specific relief of satisfaction sought." 47 C.F.R. § 1.716. The FCC "will forward informal complaints" to the carrier named. *Id.* § 1.717. A formal complaint is more complex. *Id.* § 1.722. Notably, the FCC must resolve any formal complaint filed under § 208(b)(1) within five months.

Potential claimants to the FCC have several pre-formal complaint requirements. First, any party intending to file under § 208(b)(1)—the five-month schedule for formal complaints—"shall notify the Chief of the Market Disputes Resolution Division in writing of its intent to file the complaint, and provide a copy of the letter to the defendant." 47 C.F.R. § 1.724. Second, any party that requests inclusion on the FCC's Accelerated Docket "shall submit a request to the Chief of the Enforcement Bureau's Market Disputes Resolution Division, by phone and in writing, prior to the filing of the complaint." *Id.* § 1.736. There are thus two distinct documents that can be filed before a formal complaint: (1) a pre-complaint letter discussing the five-month deadline and/or the Accelerated Docket; and (2) an informal complaint.

HD Carrier claims that it filed a pre-complaint letter; AT&T argues that HD Carrier filed an informal complaint. Research reveals no court that has directly decided whether a document like the HD Carrier-FCC Letter is a pre-complaint letter or an informal complaint for the purpose of federal court jurisdiction. Several factors, however, weigh in favor of finding the HD Carrier-FCC Letter to be a mere pre-complaint letter, ***not*** an informal complaint.

---

F.3d 904, 907 (5th Cir. 1997); *Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*, 253 F.3d 573, 575 (11th Cir. 2001). That point of law is not disputed here.

First, the HD Carrier-FCC Letter does not fit the requirements of an informal complaint. It contains the first three elements, as required by 47 C.F.R. § 1.722: the name and identifying information of both parties and a statement of facts. However, it does not satisfy part (d) of the informal complaint requirements, "the specific relief of satisfaction sought." The HD Carrier-FCC Letter concludes "[f]or the reasons stated herein, HD Carrier *will request that* the FCC make a determination that (1) AT&T is violating § 201(b) . . . ."[32] The verb tense here is important; HD Carrier is notifying the FCC that it will request specific relief in the future, *not* that it requests that relief now. The language that HD Carrier used in the letter does not ask the FCC for any investigation or even for any response.

AT&T points to *Millicorp v. Glob. Tel\*Link Corp.*, Case No. 09-23093-CIV-GRAHAM/TORRES, 2010 WL 11505849 (S.D. Fla. Apr. 14, 2010), as an example of a case where a court found a similarly vaguely defined letter to be an informal complaint, not a pre-complaint letter. *Millicorp*, however, proves too much. That court found that "Millicorp's letter to the FCC addresses and requests the FCC to take action regarding the very same practices it complains of in the instant action" using language like "Millicorp also asks that the Commission specifically find that use of local telephone numbers by customers of FCC regulated interconnected VIOP [*sic*] providers, in the manner described by Millicorp in its Comments and these Reply Comments, is lawful under federal telecommunications law and policy" and "Request for Investigation Letter." *Id.* at *3. These are present-tense verbs: "ask," "request for investigation." The HD Carrier-FCC Letter, on the contrary, does not ask for any action from the FCC.

---

[32]   HD Carrier-FCC Letter at 4 (emphasis added).

Second, the HD Carrier-FCC Letter precisely meets the requirements of a pre-complaint letter. First, it is labeled and introduced as such. It begins, "In accordance with Section 1.724 of the Commission's rules, I write to notify you that HD Carrier . . . intends to file a formal complaint ('Complaint') pursuant to 47 U.S.C. § 208(b)(1) against AT&T." This introduction invokes 47 C.F.R. § 1.724, which governs pre-complaint letters. Other courts have found that a letter's labeling is instructive. *See, e.g.*, *Digitel, Inc. v. MCI Worldcom*, Inc., 239 F.3d 187, 190 (2d Cir. 2001) (plaintiff's irate letter to the FCC divested the federal court of subject matter jurisdiction where plaintiff "conceded that its filing constituted an 'informal complaint' and that the FCC had scheduled a hearing on the matter").

Additionally, the letter accords with 47 C.F.R. § 1.724's requirement that a pre-complaint letter "notify [the FCC] in writing of [a party's] intent to file the complaint" by using nearly identical language of intent: "HD Carrier . . . intends to file a formal complaint." Additionally, the letter requests inclusion on the Accelerated Docket pursuant to 47 C.F.R. § 1.736, which can only be done, per the language of the regulation, "prior to the filing of the complaint." *Id.* § 1.736(b). The HD Carrier-FCC Letter thus fits neatly into the pre-complaint category.

AT&T asserts in its MTD Reply that, pursuant to § 208(b)(1), the HD Carrier-FCC Letter cannot be a pre-complaint letter under 47 C.F.R. § 1.724 because, per the FCC, "[s]ection 208(b) applies only to formal complaints which involve investigations into the lawfulness of a charge, classification, regulation or practice contained in tariffs filed with the Commission." *In the Matter of Implementation of the Telecommunications Act of 1996*, 12 F.C.C. Rcd. 22497, ¶ 37 (1997). The HD Carrier-FCC Letter does not mention tariffs. But determining whether § 208(b)(1) governs a claim is not straightforward, because so-called tariffed disputes can include "those matters that would have been

included in tariffs but for the Commission's forbearance from tariff regulation." *Id.* The issue has been disputed in proceedings before the FCC, and the FCC has been called upon to decide it in its final ruling on a complaint. *See, e.g.*, *In the Matter of AT&T Corp., Complainant*, 29 F.C.C. Rcd. 6393 (2014) (rejecting claim that § 208(b)(1) applies).

It may in fact be the case that the FCC would ultimately find, were it to investigate HD Carrier's claims, that those claims could not be brought under § 208(b)(1). However, this is not clear from the face of the HD Carrier-FCC Letter, which clearly notifies the FCC, in accordance with 47 C.F.R. § 1.724, that HD Carrier will attempt to bring a § 208(b)(1) complaint. HD Carrier may not succeed in bringing a claim under § 208(b)(1), but it does not follow that it has not filed a 47 C.F.R. § 1.724 pre-complaint letter—just as a federal court plaintiff whose complaint is dismissed under Rule 12(b)(6) would still have filed a complaint.

The FCC's understanding of the HD Carrier-FCC Letter bolsters this conclusion. The FCC must forward an informal complaint to an opposing party, but a complainant must be the one to forward a pre-complaint letter to an opposing party. 47 C.F.R. §§ 1.717 & 1.724. If the FCC understood the HD Carrier-FCC Letter to be an informal complaint, then it would have forwarded the complaint to AT&T. Instead, the FCC apparently took no action, as none is required in response to a pre-complaint letter.[33]

---

[33] AT&T is correct that an informal complaint deprives a court of jurisdiction at the moment of filing, and so the FCC's response to an informal complaint is immaterial to determining when a federal court lost jurisdiction. *Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 688 (5th Cir. 2006). However, the question at issue is not **when** the Court lost jurisdiction, but **whether** the HD Carrier-FCC Letter constituted a complaint at all—in which case the response of the FCC, as the arbiter of complaints and pre-complaint letters, is instructive. In any event, the FCC's response is illuminating, but not dispositive.

The differences between a complaint and a pre-complaint letter are not merely academic: a formal or informal complaint triggers an investigation. A pre-complaint letter, however, warns the FCC that an action may be forthcoming, but it does not require anything of the FCC. It is not difficult to understand why the former divests a court of jurisdiction, while the latter has no such effect. The HD Carrier-FCC Letter is undoubtedly the latter. As a pre-complaint letter, the HD Carrier-FCC Letter does not elect a remedy under § 207, and so it does not deprive this Court of jurisdiction. AT&T's Motion to Dismiss is therefore **DENIED**.

B.     **Primary Jurisdiction**

AT&T contends that if the Court does not dismiss the case for lack of subject matter jurisdiction, then it ought to dismiss or stay it under the primary jurisdiction doctrine.[34] "The doctrine is reserved for a limited set of circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency . . . . [E]fficiency is the deciding factor in whether to invoke primary jurisdiction." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citations omitted).

The Ninth Circuit and its district courts routinely stay cases pending FCC rulings on the evolving subject of VoIPs like HD Carrier. *See, e.g.*, *Clark*, 523 F.3d at 1116 (staying claim under primary jurisdiction doctrine pending FDA ruling on issue of first impression concerning regulation of VoIP providers); *see also, e.g.*, *Free Conferencing Corp. v. Comcast Corp.*, Case No. CV 15-4076 FMO (PJWx), 2016 WL 7637664, at *4 (C.D. Cal. May 31, 2016) (similar); *Free Conferencing Corp. v. T-Mobile US, Inc.*, Case

---

[34]     MTD 12.

No. 2:14-cv-07113-ODW (SHx), 2014 WL 7404600, at *9 (C.D. Cal. Dec. 30, 2014) (staying case pending FCC's ruling on similar call-blocking claim).[35]

Staying this case under primary jurisdiction is similarly appropriate here. There is an issue to be resolved: whether AT&T's conduct constitutes call-blocking, as HD Carrier alleges, or whether HD Carrier's conduct instead constitutes impermissible arbitrage, as AT&T alleges.[36] This contention hinges on whether a VoIP provider can be classified as an access stimulator.[37] Congress has placed this issue within the jurisdiction of the FCC, pursuant to statute: § 207. One need only glance at the papers filed in connection with these motions (which are listed above) to appreciate that this issue is "particularly complex," requiring "expertise . . . in administration."

However, the Court is mindful that staying a case under the primary subject jurisdiction must not impede efficiency. A stay would be inefficient if no FCC action were likely; conversely, if the FCC is poised to clarify the murky waters of HD Carrier's telecommunications claims, a stay would *promote* efficiency by allowing the body most able to resolve these claims quickly and correctly to do so.

In this instance, a stay promotes efficiency because the matter is already before the FCC. On April 24, 2020, AT&T filed an informal complaint with the FCC alleging that Wide Voice is engaged in an access stimulation arbitrage scheme.[38] Wide Voice and HD Carrier are close associates: both allegedly operate from the same Long Beach, California, office space and are owned or

---

[35] HD Carrier's business affiliate, Free Conferencing, which shares attorneys and declarants with HD Carrier, has filed similar cases against several telecommunications companies.
[36] Compl. ¶ 1; MTD 3.
[37] *Id.*
[38] AT&T-Verizon Informal Complaint [Dkt. No. 22-3] 1.

controlled by David Erickson.[39]  The AT&T-Verizon Informal Complaint alleges that in the winter of 2020, "Wide Voice suddenly routed much of [its] traffic to telephone numbers assigned by alleged VoIP Providers such as HD Carrier" in an effort to perpetuate its access arbitrage scheme.[40]  AT&T's counsel explained that this traffic is the ***exact same traffic*** at issue in the instant case.[41]  Furthermore, AT&T represents to the Court that it intends to convert its FCC proceeding against Wide Voice into a formal complaint within three months and that the FCC will rule by June 2021.[42]  In other words, the FCC is poised to determine who bears financial responsibility for the calls that AT&T routes through Wide Voice to HD Carrier.

AT&T's Second Supplemental Notice informs the Court that as of November 19, 2020, the FCC has extended the deadline for AT&T to convert its complaint into a formal complaint so that the parties can engage in settlement negotiations and that HD Carrier is participating in those settlement negotiations.[43]  Thus, the parties are actively engaged in settling the dispute over the calls at issue here.

The *Wide Voice* Order stayed a similar case under the primary jurisdiction doctrine pending the outcome of the same informal complaint before the FCC.

---

[39] *Id.* at 7.

[40] *Id.* at 1.

[41] Transcript 46:7.  HD Carrier is correct that it is not a party to the AT&T-Verizon Informal Complaint, but it offers no authority for the proposition that only administrative claims between the two named parties in the district court litigation merit staying a case under the primary jurisdiction doctrine.  Moreover, HD Carrier itself identifies Wide Voice as its connection to AT&T, and, in support of its PI Motion, HD Carrier offers a declaration from Wide Voice's CEO that details the close relationship of the two companies.  *See* Compl. ¶ 9; Nickerson Decl. 1 ¶ 1.  In view of these admissions by HD Carrier and David Erickson's ownership of both companies, the Court is at a loss to see how a ruling on the AT&T-Verizon Informal Complaint will not substantially bear on the instant question.

[42] MTD Reply 11; Second Supplemental Notice 2.

[43] *Id.* at 2.

HD Carrier's associate Wide Voice filed an action—very similar to the instant case—against MCI Communications Services, LLC (commonly known as Verizon) and CenturyLink Communications, LLC, claiming that the two telecommunications companies failed to pay tariffs on Wide Voice's long-distance calls. *Wide Voice* Order at 1-2. Verizon filed a counterclaim asserting that Wide Voice is an access stimulator. *Id.* at 2. CenturyLink and Verizon also moved to stay the case under the primary jurisdiction doctrine. *Id.* That court granted the motion: "The fact remains that whether Wide Voice is engaging in access stimulation is an issue of first impression that is 'particularly complicated' that 'requires [the FCC's] expertise' . . . [and] there is a need for uniformity on the issues raised by the parties [where] there are multiple pending proceedings [including this instant case]." *Id.* at 7-8. The same reasoning applies here.

An indefinite stay, however, risks depriving HD Carrier of a forum for its claims if the FCC, for any reason, does not resolve this dispute. Accordingly, as HD Carrier has suggested, a stay of no more than six months is appropriate.[44] AT&T shall submit periodic status reports, and, near the end of six months, both parties shall inform the Court how each wishes to proceed.

C. **Preliminary Injunction**

HD Carrier's motion for a preliminary injunction will be **DENIED without prejudice**. The Court cannot assess HD Carrier's likelihood of success on the merits, as required for a preliminary injunction, when an FCC ruling may change the legal scenario so dramatically. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[44] MTD Opposition 24-25.

## V. CONCLUSION

For the foregoing reasons, the Court will enter an Order **DENYING** Defendant's Motion to Dismiss on the issue of subject matter jurisdiction and **GRANTING** that Motion to the extent that it seeks a stay of this action. The Court will **DENY** Plaintiff's Motion for a Preliminary Injunction without prejudice.

Dated: December 2, 2020

John W. Holcomb
UNITED STATES DISTRICT JUDGE